IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      )
                              )
v.                            ) Criminal No. 06-206
                              )
ARTHUR B. GODSON IV            )

OPINION

DIAMOND, D.J.

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 filed by Arthur B. Godson IV ("petitioner"). For the following reasons, petitioner's motion will be denied.[1]

On June 8, 2006, a grand jury returned a one-count indictment charging petitioner with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924(e). The charge against petitioner arose from his arrest in the early morning hours of August 14, 2004, following a traffic stop conducted by officers of the Arnold Police Department who were conducting a DUI checkpoint. A Ford Expedition being operated by petitioner approached the checkpoint and was stopped. As officers approached the vehicle they noted that petitioner's seat was reclined and that, while the driver's side front window was closed, petitioner had opened the back driver's side window.

---

[1] Pursuant to Rule 8(a) of the Rules Governing §2255 Proceedings, the court finds that no evidentiary hearing on petitioner's motion is required. Where the record affirmatively indicates that a movant's claim for relief is without merit, the claim may be decided on the record without a hearing. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a §2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. See Nicholas, 759 F.2d at 1075. In this case, for the reasons set forth in this opinion, the record affirmatively establishes as a matter of law that petitioner's claims for relief are without merit.

As one officer spoke to petitioner through the open back side window, another officer observed a pistol in plain view on the rear seat and shouted "gun." After being ordered to exit the vehicle, petitioner began to run and a pursuit ensued. Petitioner eventually was apprehended with the assistance of a police dog. A search of petitioner's pockets resulted in the seizure of $2,248.00 in cash as well as a small amount of cocaine. A fully loaded, unregistered, black semiautomatic 9-millimeter pistol was recovered from the middle of the rear seat of the vehicle and two bags containing 27.5 grams of powdered cocaine were found in the vehicle's cupholders. In addition, a lit marijuana cigarette was found in the ashtray.

Petitioner's first trial ended in a mistrial when the jury was unable to reach a unanimous verdict. Following a re-trial, petitioner was found guilty by jury verdict. The court subsequently denied petitioner's post-trial motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c).

Petitioner was sentenced to a term of imprisonment of 240 months, a downward variance from the advisory guideline sentencing range of 262-327 applicable to petitioner as an armed career criminal under U.S.S.G. §4B1.4.[2] Petitioner filed a direct appeal to the United States Court of Appeals for the Third Circuit, which subsequently affirmed petitioner's judgment of conviction and sentence.

---

[2] Under §4B1.4(a) of the guidelines, a defendant subject to an enhanced sentence under the provisions of 18 U.S.C. §924(e) is an armed career criminal. Pursuant to §924(e)(1), a defendant who violates §922(g) and who has three previous convictions for a violent felony, as defined in §924(e)(2)(B), or a serious drug offense, as defined in §924(e)(2)(A), or both, committed on occasions different from one another, is subject to an enhanced sentence. Petitioner had three prior qualifying convictions and thus was found to be an armed career criminal.

Petitioner timely filed the pending §2255 motion asserting three grounds for relief: (1) that his trial counsel[3] was ineffective in failing to argue that a statement purportedly made by an unavailable witness was admissible as a statement against penal interest under F.R.E. 804(b)(3); (2) that his trial counsel was ineffective in failing to advise petitioner prior to trial that the purported statement would not be admissible; and, (3) that his trial counsel was ineffective in failing to advise petitioner prior to trial that a defense witness's character for truthfulness would be subject to attack by evidence of a prior criminal conviction under F.R.E. 609(a)(1). Upon due consideration of petitioner's motion, the government's response, and petitioner's reply, as well as the record as a whole, the court finds that petitioner is not entitled to relief under §2255.

A federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). In general, §2255 is a vehicle to cure only jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice" or events that were "inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 783 (1979).

---

[3] Petitioner was represented at both of his trials by retained counsel Thomas Ceraso, Esq.. Attorney Ceraso passed away prior to the filing of petitioner's §2255 motion. Petitioner was represented on direct appeal by retained counsel Robert E. Stewart, Esq.. Petitioner raises no allegations of ineffectiveness against Attorney Stewart.

In order to prevail on a claim that counsel rendered constitutionally ineffective assistance, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; <u>and</u>, (2) that the deficient performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner must establish <u>both</u> prongs of the inquiry, for "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." <u>Id.</u> at 700.

The first prong requires the petitioner to demonstrate that counsel's performance was deficient. The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. <u>Id</u>. at 689. The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. <u>Id</u>. at 690. The petitioner has the burden of overcoming the strong presumption that counsel was effective. <u>Id</u>. at 689.

If deficient performance is established, the second prong of the <u>Strickland</u> analysis requires a showing that counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To satisfy this test, a petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. <u>Id</u>. at 694.

Here, petitioner raises three claims of ineffective assistance of counsel against Attorney Ceraso, all of which relate to certain aspects

of the testimony of defense witness Kevin Richardson. The crux of petitioner's trial defense was that the gun found in the rear seat of the Ford Expedition that petitioner had been operating on the night of his arrest inadvertently had been left in the vehicle, unbeknownst to petitioner, by an individual known as "Pit Bull." While petitioner took the stand and testified that he did not have a gun and that he was unaware of the presence of the gun on the rear seat (Doc. 81 at 106-107)[4], the defense's theory that the weapon was left in the vehicle by Pit Bull was advanced primarily through the testimony of Richardson, a friend of petitioner's.

Richardson testified that on the evening in question he had made arrangements to meet petitioner in New Kensington at a bar called Bailey's. (Doc. 81 at 71). Richardson drove the Expedition to Bailey's accompanied by four other individuals, including Pit Bull, who was seated alone in the third-row seat. Richardson stated that he had observed Pit Bull carrying a gun in his waistband prior to the group leaving Pittsburgh and that he also had seen Pit Bull with a weapon on prior occasions. (Doc. 81 at 71-73). After making a brief stop at Pit Bull's parent's house, the group proceeded to New Kensington, where they met up with petitioner at Bailey's before ultimately going to another establishment called Big Dawg's. (Doc. 81 at 73-75).

Richardson further testified that he had 27 or 28 grams of cocaine with him that night (Doc. 81 at 74) and that he, along with Pit Bull and several others, but not petitioner, used cocaine throughout the course of the evening, in addition to having a lot to drink. (Doc. 81 at 74-

---

[4] Document No. 81 at Criminal No. 06-206 is the Transcript of Jury Trial held on April 26, 2007. References to the transcript of any proceedings held in this case hereinafter will be identified in the form of "Doc. ___ at ___."

77). Richardson stated that the group "closed the place down" and that by the end of the evening he was "pretty tore up" from the alcohol and cocaine. (Doc. 81 at 76-77).

After leaving Big Dawg's, Richardson testified that petitioner took the keys to the Expedition from him and made sure that he and Pit Bull got a ride home in a jitney. (Doc. 81 at 78). He indicated that the jitney stopped at Pit Bull's father's house first at which point Pit Bull "made a statement." (Id.) The government objected and a sidebar conference was held at which Attorney Ceraso argued that the hearsay statement made by Pit Bull to which Richardson referred - a statement to the effect of "My God! I left the gun in the car!" - was admissible under the excited utterance exception to the hearsay rule. F.R.E. 803(2). Finding that the statement was neither related to a startling event, nor was made under the stress caused by a startling event, the court sustained the government's objection, citing <u>David by Berkeley v. Pueblo Supermarket of St. Thomas</u>, 740 F.2d 230, 235 (3d Cir. 1984). (Doc. 81 at 79-81).

Richardson concluded his testimony on direct examination by indicating that the following morning, upon finding out about petitioner's arrest, he, Pit Bull and the others who had been with them the preceding night went to the Arnold Police Department in an attempt to get the Expedition back. (Doc. 81 at 82). At that time, according to Richardson, he made a statement that the cocaine found in the front consol belonged to him, and Pit Bull also made a written statement to the police. (Id.)

At the start of cross-examination, the prosecutor asked Richardson about his 1994 convictions for aggravated assault and robbery. (Doc. 81 at 85). Attorney Ceraso requested a sidebar conference at which time

he moved for a mistrial and argued that Richardson's prior convictions were not admissible under F.R.E. 609(a)(1)(A) and 403 because any arguable probative value of those violent felony convictions was substantially outweighed by the danger of unfair prejudice in admitting them. The court denied the motion for mistrial and found that the only prejudice to petitioner was that the credibility of his defense witness was attacked. (Doc. 81 at 85-95). The court did agree to Attorney Ceraso's request for a curative instruction and cautioned the jury that the testimony regarding Richardson's prior convictions was not to be considered by them for any purpose other than the extent, if any, to which it might bear upon Richardson's credibility. (Doc. 81 at 111).

Petitioner's first allegation of ineffectiveness relates to the hearsay statement allegedly made by Pit Bull indicating that he had "left the gun in the car." Specifically, petitioner argues that Attorney Ceraso was deficient in failing to argue that Pit Bull's alleged statement was admissible as a statement against penal interest under F.R.E. 804(b)(3), either because Pit Bull was a convicted felon who was not permitted to have a gun or because he did not have a license to carry a firearm. Because petitioner can show neither deficient performance nor prejudice in this regard, his first ineffective assistance of counsel claim fails as a matter of law.

First, petitioner cannot show deficient performance. As noted above, the court starts with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . Moreover, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

Strickland, 466 U.S. at 689.

Here, from counsel's perspective at the time of the trial, there was no basis upon which to make an argument that Pit Bull's statement was a statement against penal interest because it is clear from the record that nobody - not petitioner, not Attorney Ceraso, not the government or the investigators, not even Richardson - was aware of Pit Bull's true identity, let alone whether he was a convicted felon or did not have a license to carry a firearm such that his statement to the effect that he "left the gun in the car" arguably could have been perceived as a statement against penal interest.

Petitioner testified that he "didn't really know" the person that was with Richardson outside of Big Dawg's (Doc. 81 at 110) and that when he put Richardson in the jitney he "really wasn't paying attention" to Pit Bull because he didn't know him. (Id. at 135). Police Officer Michael Ondo of the Arnold Police Department, who participated in the DUI checkpoint stop and arrest of petitioner, testified that he only recently had gained knowledge of an individual with the nickname of Pit Bull and that he was not able to find him based merely on the nickname. (Doc. 80 at 215).[5] He also stated that he had heard that Pit Bull was deceased. (Id.) When asked on cross-examination what Pit Bull's real name was, Richardson referred to him as "Steve Ferentay (spelled phonetically)." (Doc. 81 at 113).[6]

---

[5] Document No. 80 at Criminal No. 06-206 is the Transcript of Jury Trial held on April 25, 2007.

[6] Petitioner does not allege, nor does the record show, that Attorney Ceraso was ineffective in failing to investigate to discover Pit Bull's true identity. At the time of trial, nobody, including Richardson, appeared to know anything about Pit Bull other than that he was with Richardson the night of petitioner's arrest and that he was deceased at the time of trial. Even at the time of the filing of petitioner's pending §2255 motion, Pit Bull's true identity still was

Moreover, to the extent petitioner suggests Attorney Ceraso was not aware of, or did not understand, the Federal Rules of Evidence, that argument clearly is belied by the record. Attorney Ceraso recognized that the statement at issue was hearsay and argued vigorously that it should be admitted as an exception to the hearsay rule as an excited utterance under F.R.E. 803(2). Based on the information known at the time of the trial, this was the strongest argument available in favor of the admission of the statement. The fact that counsel was not successful with respect to that argument is not sufficient to support a claim of ineffective assistance of counsel. Salerno v. United States, 870 F.Supp. 549, 553 (S.D.N.Y. 1994).

Even assuming, however, that Attorney Ceraso had known Pit Bull's identity and that he was not permitted to carry a weapon, his decision not to seek admission of the statement under the statement against penal interest exception to the hearsay rule could not be deemed ineffective assistance of counsel because the statement would not have been admissible under that exception in any event. See, e.g., Moore v. Deputy Commissioner(s) of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir. 1991)(failure to raise objection not ineffective when there is no basis for objection); United States v. Trzaska, 111 F.3d 1019, 1029 (2d Cir. 1997)(failure to make an argument unsupported by evidence not

---

unknown. In the affidavit included as an exhibit to petitioner's motion, he refers to Pit Bull as "Steve Ferentay." It was not until petitioner filed his reply to the government's response, years after petitioner's trial, that he submitted as an exhibit a court summary from the Allegheny County Court of Common Pleas, which shows that an individual named Steven James Prunty, whom petitioner now alleges is Pit Bull, had pled guilty in 2001 to numerous offenses, including two second-degree misdemeanors for driving under the influence and firearms not to be carried without a license, which arguably would have made him ineligible to possess a firearm at the time of his alleged statement in 2004.

ineffective assistance).

Rule 804(b) of the Federal Rules of Evidence allows for certain exceptions to the hearsay rule when the declarant is unavailable.[7] F.R.E. 804(b)(3) permits the introduction of a hearsay statement if the declarant is unavailable and if a reasonable person in the declarant's position would have made the statement if it were untrue "because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to ... expose the declarant to civil or criminal liability." Of significant import in the present case, however, a hearsay statement offered in a criminal case that tends to expose the declarant to criminal liability must be supported by corroborating circumstances that clearly indicate its trustworthiness. F.R.E. 804(b)(3)(B).

"The requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication," reflecting "a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or its contents, enhanced in either instance by the required unavailability of the declarant." Advisory Committee Note to F.R.E. 804(b)(3).

In this case, even assuming that Pit Bull's statement that he "left the gun in the car" was against his penal interest because he was unable to possess a firearm, the statement nonetheless would not have been admissible under F.R.E. 804(b)(3) because there were no corroborating circumstances clearly indicating its trustworthiness. First, there is no corroborating evidence that the statement even was made. No one

---

[7] There does not appear to be a dispute that the individual known as Pit Bull was deceased at the time of petitioner's trial.

- 10 -

other than Richardson heard the alleged statement, and Richardson testified that petitioner was a good friend for whom he would lie to help him, albeit "not under oath." (Doc. 81 at 120). It also is significant that when Richardson was interviewed by Attorney John Ceraso, the nephew of petitioner's defense counsel, in September of 2005 and provided a notarized statement indicating that the cocaine found in the vehicle on the night in question belonged to him, he made no mention of Pit Bull or a gun, which would have provided at least some corroboration to his testimony at the trial a year and a half later.

Moreover, even assuming the statement was made, there is nothing in the record establishing its trustworthiness. Richardson, the only individual who heard the alleged statement, testified that he was "pretty tore up" on cocaine and alcohol at the time, and further testified that Pit Bull also was drunk and high on drugs. Under these circumstances, any statement that Pit Bull purportedly made that evening was not supported by corroborating evidence establishing its trustworthiness. In the absence of such corroborating evidence, the danger that Richardson may have been fabricating the statement to exculpate his friend was strong, and the statement would not have been admissible under F.R.E. 804(b)(3) even had Attorney Ceraso made the argument. See, e.g., United States v. McClinton, 432 Fed. Appx. 166, 169 (3d Cir. 2011)(district court did not error in concluding that a purported statement against penal interest was not admissible under Rule 803(b)(3) where there was insufficient corroborating evidence to indicate its trustworthiness). Accordingly, petitioner's first ineffective assistance claim is without merit.

Nor has petitioner established prejudice by showing a strong probability that the outcome of the trial would have been different had

Pit Bull's statement been admitted. Contrary to petitioner's assertion that the statement was admitted at his first trial, which resulted in a mistrial when the jury was unable to reach a unanimous verdict, the record shows that the government in fact did object to Richardson's testimony that Pit Bull "said that he forgot the gun in the truck" and that objection was sustained. (Doc. 66 at 53).[8]

Moreover, even without the purported statement, the jury, had it been so inclined, could have inferred from the rest of Richardson's testimony that Pit Bull had left the gun in the car even without a statement from Pit Bull to that effect, as Richardson testified that he had seen Pit Bull with a gun earlier in the evening, that Pit Bull had been the only one sitting in the seat upon which the gun was found, and that the gun that the government offered in evidence at trial looked like the one Pit Bull had been carrying in his waistband. Clearly, the jury did not find Richardson's testimony credible, and it is unlikely that any statement Pit Bull allegedly may have made to Richardson, with no corroborating evidence, would have altered their credibility determination.

As petitioner cannot show either deficient performance nor prejudice from Attorney Ceraso's failure to seek admission of Pit Bull's alleged statement under F.R.E. 804(b)(3), his first ineffectiveness claim must fail as a matter of law.

Petitioner's second ineffective assistance claim is related to the first. Petitioner argues that Attorney Ceraso's performance was deficient because he failed to determine prior to trial that Pit Bull's statement would not be admissible and that he failed to inform

---

[8] Document No. 66 at Criminal No. 06-206 is the Transcript of Jury Trial held on January 17, 2007.

AO 72
(Rev. 8/82)

petitioner that it would not be admissible. In a similar vein, petitioner alleges in his third claim of ineffective assistance that Attorney Ceraso's performance was deficient because he failed to determine prior to trial that Richardson's character for truthfulness could be challenged based on his prior felony convictions under Rule 609(a)(1)(A), and that he failed to inform petitioner that Richardson's testimony could be so challenged. In both respects, petitioner avers that had he known Pit Bull's statement would not be admitted, and that Richardson's testimony could be impeached, he would have pled guilty instead of going to trial.

As an initial matter, petitioner's averments simply are not supported by the record. Contrary to petitioner's assertion that Attorney Ceraso was "utterly unaware of the possibility" that Pit Bull's statement could be inadmissible, or that Richardson's character for truthfulness could be attacked by his prior convictions, the record shows that Attorney Ceraso was well-prepared to argue, and vigorously did argue, that Pit Bull's statement should be admitted as an excited utterance. (Doc. 81 at 78-81). Moreover, immediately upon the government mentioning Richardson's prior convictions, Attorney Ceraso requested a sidebar and moved for a mistrial and urged that the convictions be excluded under F.R.E. 403 because any probative value was substantially outweighed by the danger of unfair prejudice (Doc. 81 at 85-97). In fact, not only was Attorney Ceraso prepared enough to make that argument, he also was diligent enough to obtain a curative instruction from the court cautioning the jury regarding the limited extent to which they could consider Richardson's prior convictions. Attorney Ceraso's performance is not indicative of an individual who was unaware of the Federal Rules of Evidence.

Moreover, petitioner's assertions that Attorney Ceraso never informed him of the possibility that Pit Bull's statement could be inadmissible or that Richardson's testimony could be attacked based on his prior convictions are belied by the fact that both scenarios actually transpired at petitioner's <u>first</u> trial, which ended in a mistrial. As already noted, the government in fact did object to the admission of Pit Bull's statement at the first trial and that objection was sustained. (Doc. 66 at 53). Evidence of Richardson's prior aggravated assault and robbery convictions also was introduced at the first trial. (Doc. 66 at 39; 74). Accordingly, petitioner's averment that Attorney Ceraso never informed him that Pit Bull's statement could be inadmissible nor that Richardson's testimony could be impeached by his prior convictions lacks credence.

Assuming, however, that petitioner's averments were accurate, he still would not be entitled to relief on either of his two remaining ineffective assistance claims because he cannot show any prejudice.

In two recent cases the United States Supreme Court has re-emphasized that the Sixth Amendment right to counsel extends to the plea bargaining process and that defendants are entitled to the effective assistance of competent counsel during plea negotiations. <u>Missouri v. Frye</u>, ___ U.S. ___, 132 S.Ct. 1399 (2012); <u>Lafler v. Cooper</u>, ___ U.S. ___, 132 S.Ct. 1376, 1384 (2012). Accordingly, the <u>Strickland</u> standard applies in the plea context. <u>Id.</u>

In <u>Frye</u>, the United States Supreme Court held that in the context of pleas, a defendant must show that the outcome of the plea process would have been different with competent advice. In <u>Lafler</u>, the court held that where ineffective advice in the plea process leads to a plea offer's rejection, and the prejudice alleged is having to stand trial,

"a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." 132 S.Ct. at 1385.

In the present case, however, petitioner does not allege that faulty advice from Attorney Ceraso caused him to reject a plea offer. Indeed there is no evidence at all that any plea discussions ever occurred or that a plea offer was ever made. Indeed, petitioner avers in his affidavit that had he known that Pit Bull's statement would be inadmissible or that Richardson's testimony could be impeached, he "would have instructed Mr. Ceraso to engage in plea negotiations, or I hwould [sic] have simply pleaded guilty to my federal indictment." This statement suggests that petitioner did not request that Attorney Ceraso engage in any plea negotiations at all.

Here, there is no reasonable probability that a plea offer would have been presented to the court or accepted simply because there is no indication that any plea offer ever was made, or even discussed. To the contrary, the record establishes that petitioner in fact never intended to enter a guilty plea. Petitioner maintained his innocence throughout the proceedings in this case. Petitioner testified under oath at his first trial that the gun found in the car was not his and that he was unaware of its presence. That trial resulted in a mistrial when the jury could not reach a unanimous verdict. There is no evidence indicating that petitioner had any change of heart between the first

trial and the second, at which petitioner again maintained his innocence by testifying under oath that the gun was not his and that he was unaware of its presence in the vehicle.

Petitioner is not alleging here that Attorney Ceraso misled him into rejecting a reasonable plea offer from the government, that he refused petitioner's instructions to engage in plea negotiations or that Attorney Ceraso failed to advise him of the comparative sentence exposure between standing trial and accepting a plea offer, all of which could be crucial to a defendant's decision whether to enter a plea. See, e.g., United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). Nor does petitioner allege that Attorney Ceraso failed to communicate any formal offers from the prosecution on terms and conditions that may have been favorable to him. See, Frye, 132 S.Ct. at 1408. Instead, petitioner merely alleges that he would have pled guilty and gone to trial had he been made aware in advance of potential adverse evidentiary rulings, which in fact were made adversely to him at his first trial.

"As multiple courts have recognized, 'after the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.' Berry v. United States, 884 F.Supp.2d 453, 463 (E.D. Va. 2012)(citations omitted). Here, petitioner maintained his innocence throughout the proceedings and testified under oath at two trials that the firearm in question was not his and he was unaware of its presence in the vehicle, and there is no contrary evidence, other than petitioner's after-the-fact averment made after conviction, that he ever would have been amenable to a plea deal. Under these circumstances, the record belies petitioner's assertion that he had any intention of entering a guilty plea. See, e.g., United

States v. Gonzalez-Rivera, 217 Fed. Appx. 166, 170 (3d Cir. 2007)(any alleged prejudice was too speculative where record showed that defendant maintained his innocence throughout proceedings and therefore was not willing to plead guilty); United States v. Nigro, 419 Fed. Appx. 244, 248 (3d Cir. 2011)(defendant failed to demonstrate reasonable probability that he would not have pled guilty where facts showed he did not intend to enter a plea).

Nor can petitioner establish a reasonable probability that but for his counsel's alleged ineffectiveness, he would have received a lesser sentence. Although petitioner alleges he would have received a lower guidelines range had he pled guilty because he would have received a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1, there is not a reasonable probability that he would have received such a reduction in light of the fact that petitioner already had put the government to its burden of proof at the first trial at which he testified under oath maintaining his innocence.[9] See, e.g., United States v. Berry, 61 Fed. Appx. 797, 800 (3d Cir. 2003)(defendant failed to show guilty plea would have resulted in different sentence where defendant likely would not have received acceptance of responsibility adjustment under U.S.S.G. §3E1.1).

---

[9] A defendant who enters a guilty plea is not entitled to an acceptance of responsibility reduction as a matter of right. Application note 3 to U.S.S.G. §3E1.1. Pursuant to application note 1 to U.S.S.G. §3E1.1, in considering whether to grant a reduction for acceptance of responsibility, the court is to consider whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable." District courts do not abuse their discretion in denying the acceptance of responsibility adjustment in situations where the defendant denied his complicity for the crime and all other relevant conduct. See, United States v. Booth, 432 F.3d 542, 548 (3d Cir. 2005).

The record in this case establishes that Attorney Ceraso conducted a vigorous and zealous defense for petitioner throughout these proceedings. There is no indication that Attorney Ceraso was unprepared or otherwise deficient. As petitioner has been unable to establish either deficient performance or any prejudice, he is not entitled to relief on any of the grounds of ineffective assistance of counsel raised in his §2255 motion, and the motion will be denied.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered a determination of whether a certificate of appealability should issue also shall be made. The issuance of a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause).

Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of a denial of the constitutional right." 28 U.S.C. §2253(c)(2). As this court's foregoing discussion makes clear, petitioner has failed to make a substantial showing of a denial of a constitutional right. Accordingly, this court determines that a certificate of appealability should not issue in this case. See Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

For the reasons set forth above, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 fails to raise a meritorious claim and must be denied as a matter of law.

AO 72
(Rev. 8/82)

- 18 -

An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: *March 27, 2013*

cc: Margaret E. Picking
    Assistant United States Attorney

    Arthur B. Godson IV